# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-3339

ROBERT H. GRAY, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 25, 2015                               Decided April 23, 2015)

*Michael E. Wildhaber*, of Washington, D.C., with whom *Matthew D. Hill*, of Daytona Beach, Florida, was on the brief for the appellant.

*Sarah Fusina*, with whom *Tammy L. Kennedy*, Acting General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Penny C. Kahn*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

*John B. Wells*, of Slidell, Louisiana, was on the brief for Blue Water Navy Vietnam Veterans Association and for Military-Veterans Advocacy, Inc., as amici curiae.

Before HAGEL, DAVIS, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*: The appellant, Robert H. Gray, appeals through counsel a November 6, 2013, Board of Veterans' Appeals (Board or BVA) decision that denied disability compensation for (1) diabetes mellitus (diabetes), (2) neuropathy of the left and right lower extremities, (3) ischemic heart disease, and (4) hypertension – all to include as due to herbicide exposure – and (5) erectile dysfunction, to include as due to herbicide exposure, secondary to diabetes, or both. Record of Proceedings (R.) at 3-11. This appeal is timely, and the Court has jurisdiction to review the Board's November 2013 decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court, with oral argument, to address Mr. Gray's argument that VA's interpretation of 38 C.F.R. § 3.307(a)(6)(iii) designating Da Nang Harbor as an offshore, rather than

inland, waterway is arbitrary and capricious. For the reasons discussed below, the Court holds that VA's interpretation is inconsistent with the purpose of the regulation and does not reflect the Agency's fair and considered judgment. Upon review of the parties' arguments, the Court will affirm in part and vacate in part the Board's November 6, 2013, decision.[1] The vacated matters will be remanded for proceedings consistent with this decision.

## I. BACKGROUND

Mr. Gray served on active duty in the U.S. Navy from September 1971 to February 1975. R. at 547. He served aboard the U.S.S. *Roark* from March 1972 through September 1974. *Id.* The deck logs reflect that the U.S.S. *Roark* anchored in Da Nang Harbor multiple times in 1972. R. at 611-17. The deck logs also reflect that the ship operated "off the Cua Viet River mouth" and engaged the enemy in the vicinity of the Cua Viet River. R. at 617.

In June 2007, Mr. Gray applied for disability compensation for several conditions including "diabetes – type 2," bilateral neuropathy of the lower limbs, and "heart attack/heart damage." R. at 942. VA outpatient records reflect diagnoses for all three conditions. R. at 678, 763. Recognizing that Mr. Gray's diabetes claim may be affected by the then-pending action in *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 102 (Jan. 21, 2009), the regional office (RO) deferred that claim until *Haas* was resolved.[2] R. at 780-82. A May 2008 rating decision

---

[1] The November 2013 Board decision denied five claims. Mr. Gray does not distinguish between his claims, thus they are all on appeal. The Court notes that the Board denied the hypertension claim because it found that even if Mr. Gray were entitled to the presumption of herbicide exposure, this claim would fail because hypertension is not on the list of diseases qualifying for presumptive service connection based on exposure. R. at 20. Mr. Gray does not challenge this determination. Accordingly, the Court will affirm that portion of the Board's decision denying the hypertension claim. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (declining to remand when there is no benefit flowing to the veteran).

[2] After this Court's decision in *Haas v. Nicholson*, 20 Vet.App. 257 (2006), VA requested, and the Court granted, leave to stay cases related to *Haas* pending the appeal to the U.S. Court of Appeals for the Federal Circuit. *Ribaudo v. Nicholson*, 21 Vet.App. 137 (2007) (en banc order). *Compare Ribaudo v. Nicholson*, 20 Vet.App. 552, 561 (2007) (en banc) (holding that the Secretary may stay cases pending an appeal of a Court opinion to the Federal Circuit with leave of this Court), *with Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991) (holding that VA is bound by decisions of this

2

denied Mr. Gray's neuropathy and heart disability claims. R. at 618-27. That same month, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) issued a decision in *Haas*.[3]

In August 2008, Mr. Gray submitted an additional claim for "sexual dysfunction due to Type 2 diabetes." R. at 609. In October 2008, the appellant submitted a Notice of Disagreement as to the May 2008 rating decision. R. at 596-97. A February 2009 rating decision denied service connection for diabetes and for erectile dysfunction (ED). R. at 410-17. The RO noted that presumptive service connection for diabetes based on herbicide exposure was not warranted because the evidence did not show that Mr. Gray served "on the ground" in Vietnam. R. at 416.

Mr. Gray perfected his appeal of the neuropathy and heart disease claims in July 2009 and the diabetes and ED claims in September 2009. R. at 336-37, 377-78. In January 2010, Mr. Gray sought to reopen a claim for ischemic heart disease and submitted supporting documents including Internet articles discussing VA's effort to compile a list of "Blue Water Navy ships," an excerpt from "Veterans and Agent Orange: Update 2008," and a copy of a November 2009 Board decision from another veteran's appeal. R. at 302, 308-10, 312-20. The November 2009 Board decision stated that

> in the instant case, the [v]eteran's service was conducted on a ship that frequently anchored in a harbor within the territorial borders of Vietnam. The evidence of record clearly shows that Da Nang Harbor is well sheltered and surrounded on three sides by the shoreline of Vietnam. The harbor is nearly totally surrounded by land and . . . the entire harbor is located within the territorial boundaries of Vietnam. As such, given the location of the harbor as being surrounded by the land on three sides, and the evidence that the harbor is within the territory of Vietnam, and resolving all doubt in the [v]eteran's favor, the Board finds that Da Nang Harbor is an inland waterway for purposes of the regulation.

R. at 320. The Board granted presumptive service connection for the veteran in that case stating that there was "credible evidence that the [v]eteran *set foot* on land in Vietnam during the Vietnam Era, and he now has diabetes mellitus." *Id.* (emphasis added).

---

Court, unless or until that decision is overturned by this Court en banc, the U.S. Court of Appeals for the Federal Circuit, or the U.S. Supreme Court).

[3] The Federal Circuit affirmed VA's interpretation of § 3.307 requiring "the servicemember's presence at some point on the landmass or the inland waters of Vietnam." *Haas v. Peake*, 525 F.3d. at 1193.

In a June 2010 diabetes compensation and pension (C&P) examination, the examiner noted Mr. Gray's service on the U.S.S. *Roark* and his statement "that he was never on land." R. at 264. The examiner found that Mr. Gray's ED and peripheral neuropathy were "as likely as not" secondary to his diabetes. R. at 267. An August 2010 Supplemental Statement of the Case (SSOC) denied the claims for diabetes, ED, peripheral neuropathy, and heart attack and heart damage. R. at 257-63.

Regarding Mr. Gray's ischemic heart disease claim, in April 2011, the RO issued a formal finding of a lack of information for corroborating exposure to Agent Orange, noting that a March 2011 response from the Joint Services Records Research Center did not reflect that the ship transited inland waters or docked or that personnel set foot in Vietnam. R. at 202-03. In May 2011, the RO denied disability compensation for the heart attack and heart damage claim, also claimed as ischemic heart disease, for purposes of entitlement to retroactive benefits as a result of exposure to herbicides. R. at 193-201.

In January 2012, Mr. Gray, through counsel, submitted additional argument asserting that although the Federal Circuit upheld VA's interpretation of 38 C.F.R. § 3.307(a)(6)(iii) requiring actual presence on the landmass or inland waters of Vietnam, "[t]he issue is whether service aboard [the U.S.S. *Roark*] while it is anchored in [Da Nang Harbor] in Vietnam constitutes service in the inland waters of Vietnam." R. at 153. A July 2012 SSOC denied all Mr. Gray's pending claims. R. at 124-29.

In the November 2013 decision on appeal, the Board rejected Mr. Gray's argument that Da Nang Harbor is an inland waterway of Vietnam because it contradicted "VA's official position on this matter." *Id.* For support, the Board cited a December 2008 VA *Compensation & Pension Service Bulletin* (December 2008 C&P Bulletin) that "specifically stated that Da Nang Harbor and all other harbors along the Vietnam coastline" were considered blue water and not brown water.[4] R. at 17. The Board also relied on a September 2010 Veterans Benefit Administration Training Letter (Training Letter 10-06) for the same point. *Id.* The Board then stated that "[t]he rationale for concluding Da

_____

[4] VA distinguishes the "brown water" Navy-smaller vessels that "operated on the muddy, brown-colored inland waterways of Vietnam" from the "blue water" Navy-larger "gun line ships and aircraft carriers . . . operat[ing] on the blue-colored waters of the open ocean." Veterans Benefits Administration Compensation and Pension Training Letter 10-06, at 3 (Sept. 9, 2010).

Nang Harbor was an open waterway, as opposed to inland waters of Vietnam, is discussed in the December 2008 C&P Bulletin, Training Letter 10-06, and [*VA Adjudication Procedures Manual Rewrite* (M21-1MR)] provisions. For the sake of brevity, this rationale will not be reiterated in this decision." *Id.*

The Board also rejected Mr. Gray's argument that denying him the presumption of herbicide exposure when the November 2009 Board decision had granted it to a different veteran violated the Equal Protection Clause. R. at 18-19. The Board emphasized that under 38 C.F.R. § 20.1303, the November 2009 Board decision did not have precedential value in Mr. Gray's case. R. at 18. The Board noted that it did not have the specific facts of the other case before it, and even if the facts were before it, the Board could not ignore VA's stated policy that excludes Da Nang Harbor from inland waters of Vietnam. *Id.* Finding that the evidence did not indicate that Mr. Gray had in-country service or documented visitation in the Republic of Vietnam, the Board concluded that he was not entitled to a grant of service connection on a presumptive basis. R. at 20. This appeal followed.

## II. THE PARTIES' ARGUMENTS

Mr. Gray argues that the Board made three errors. First, he asserts, the Board's finding that anchoring in Da Nang Harbor does not constitute service on the inland waters of the Republic of Vietnam is arbitrary and capricious. Appellant's Brief (Br.) at 12-13. Mr. Gray asserts that there is no legal authority or rationale supporting VA's bare policy statement that Da Nang Harbor is "blue water." *Id.* at 13-14. Mr. Gray notes that the only justification for classifying Da Nang Harbor as blue water is an opinion that "'Da Nang Harbor is easy to enter due to being open to the sea.'" *Id.*; Appendix at 47.

Mr. Gray urges the Court to adopt an alternative definition for "inland waters" espoused in the United Nations Convention on the Territorial Sea and the Contiguous Zone (Convention), Apr. 29, 1958, 15 U.S.T. 1606, T.I.A.S. No. 5639 (entered into force for the United States June 10, 1964) and applied by the U.S. Supreme Court in *United States v. Louisiana*, 394 U.S. 11, 22-23 (1968) (applying the treaty definition to a Submerged Lands Act issue). He asserts that under this

alternative definition, Da Nang Harbor would be classified as an inland waterway, and he would be entitled to the presumption of herbicide exposure. Appellant's Br. at 16.

Alternatively, Mr. Gray argues that the Board committed a second error by violating the Equal Protection Clause of the Fifth Amendment of the U.S. Constitution because a November 2009 Board decision had applied the presumption to a similarly situated veteran. *Id.* at 18-19. He asserts that the Board improperly rejected his argument "out of hand" and ignored the Board's policy to "'strive for consistency.'" *Id.* at 19. Finally, Mr. Gray contends that, should the Court uphold VA's classification of Da Nang Harbor as blue water, remand is still appropriate because the Board provided inadequate reasons or bases for its decision. *Id.* at 23-24.

The Secretary argues that the Court should affirm the Board decision because Mr. Gray's arguments for reversal were considered and rejected by the Federal Circuit in *Haas v. Peake*. Secretary's Br. at 10. The Secretary asserts that in *Haas*, the Federal Circuit deferred to VA's interpretation of "service in the Republic of Vietnam" as including service on inland waterways and excluding service only in the blue water Navy from presumptive herbicide exposure. *Id*. at 11. The Secretary further maintains that the VA's *Adjudication Procedures Manual Rewrite* (M21-1MR) clearly states that anchoring in Da Nang Harbor does not constitute inland waterway service. *Id*. at 12. He argues that it is "manifestly clear that VA does not view offshore service in Da Nang Harbor" as brown water service and its interpretation is entitled to substantial deference. *Id.* at 14-20. The Secretary contends that Mr. Gray's reliance on *United States v. Louisiana* is misplaced because in *Louisiana*, the Supreme Court was interpreting only the Submerged Lands Act and chose to apply the Convention definition in that specific context, and therefore, the language of the Convention as applied in *Louisiana* is not binding on VA or this Court. *Id.* at 13.

As to Mr. Gray's remaining arguments, the Secretary argues that his Equal Protection argument must fail. First, under the rational basis test, he asserts that the Federal Circuit in *Haas* has already found that VA has a rational basis for its interpretation of 38 C.F.R. § 3.307(a)(6)(iii). Secretary's Br. at 21. Second, the Secretary maintains that Mr. Gray ignores that this Court has previously declined to consider other veterans' Board decisions. *Id.* at 23. The Secretary asserts that the November 2009 Board decision may not serve as a basis for an Equal Protection challenge and that Mr. Gray has not demonstrated that VA lacks a rational basis for its interpretation of inland

6

waterways as excluding Da Nang Harbor. *Id.* at 25-26. Finally, the Secretary argues that the Board provided adequate reasons and bases for its decision. *Id.* at 26-27.

In the interest of narrowing the issues, the Court takes note of the following concessions made at oral argument. First, Mr. Gray concedes that the U.S.S. *Roark*'s mooring to the U.S.S. *Samuel Gompers* while it was docked to a pier in Da Nang Harbor is irrelevant: he bases his argument solely on his ship's presence within the harbor itself. Oral Argument (Arg.) at 02:45 (Feb. 25, 2015). Second, Mr. Gray concedes that he never physically set foot on land in the Republic of Vietnam. *Id*. Finally, with the exception of hypertension, Mr. Gray's claimed disabilities are on the list of diseases entitled to presumptive service connection as a result of herbicide exposure. Therefore, as both parties agreed at oral argument, if the Court were to find that Da Nang Harbor is an inland waterway, Mr. Gray would prevail on his claims for disability compensation. Oral Arg. at 49:25.

### III. ANALYSIS

A. Overarching Legal Framework: *Haas v. Peake*

Under 38 C.F.R. § 1116(a) a veteran who "served in the Republic of Vietnam" between January 6, 1962, and May 7, 1975, is presumed service connected for certain conditions likely caused by exposure to Agent Orange, including type II diabetes mellitus, even if he cannot prove he was ever actually exposed to qualifying herbicide. 38 U.S.C. § 1116(a). "'Service in the Republic of Vietnam' includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam." 38 C.F.R. § 3.307(a)(6)(iii) (2014).

In reviewing "an agency's construction of the statute which it administers," a court must apply the doctrine set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, and determine whether the statute speaks to the precise issue or is ambiguous. 467 U.S. 837, 842 (1984). If the statute is silent or ambiguous with respect to the specific issue, the question becomes whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 843. The agency's interpretation will not be set aside unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *Breniser v. Shinseki*, 25 Vet.App. 64, 72 (2011).

7

Here the Court is not working with a blank canvas: the Federal Circuit engaged in a thorough and extensive application of the *Chevron* doctrine in *Haas v. Peake*, *supra*. Reviewing the language and legislative history of 38 U.S.C. § 1116(a), the Federal Circuit found that the statutory phrase "served in the Republic of Vietnam" was ambiguous as applied to veterans who served offshore in ocean-going vessels. R. at 1183-84. The Federal Circuit then determined that the implementing regulation, 38 C.F.R. § 3.307(a)(6)(iii), reasonably interpreted the statute to "require some presence in Vietnam, even if the veteran's service largely occurred elsewhere."[5] *Id.* at 1186. However, the Federal Circuit also concluded that the phrases "duty or visitation in the Republic of Vietnam" and "waters offshore" were "sufficiently ambiguous" to require a review of VA's interpretation of its own regulation. *Id.*

In *Haas v. Peake*, VA argued that it reasonably interpreted its regulation to limit the presumption of exposure to veterans who served on or visited the Vietnamese landmass or its inland waterways and excluded veterans – such as Mr. Haas – who served exclusively offshore in ocean-going ships.[6] *Id.* at 1182-83. In *Haas*, VA noted that it drew this line because "Agent Orange was sprayed only on land, and therefore, the best proxy for exposure is whether a veteran was present within the land borders of the Republic of Vietnam." *Id.* at 1192. The Federal Circuit found this explanation reasonable and concluded that absent evidence that VA's line was irrational, it would not impose a different line. *Id.* at 1192-93.

Essentially, *Haas v. Peake* laid the foundation for the blue-versus-brown-water distinction. The Federal Circuit recognized that "[t]he entire predicate for the Agent Orange Act and its regulations was exposure to herbicides in general and Agent Orange in particular." *Id.* at 1185. Thus, VA's interpretation of § 3.307(a)(6)(iii) – "as excluding service members who never set foot

---

[5] Although Mr. Gray asserted that 38 C.F.R. § 3.307(a)(6)(iii) merely parrotted the statute and was therefore not entitled to deference, in *Haas v. Peake*, the Federal Circuit observed that the VA's regulation "elaborate[d] on the statutory phrase 'served in the republic of Vietnam' by construing it to include service offshore and service in other locations as long as the service 'involved duty or visitation in the Republic of Vietnam.'" 525 F.3d at 1187. The Federal Circuit clearly stated that this language "qualifies as interpretation rather than reiteration." *Id.*

[6] Mr. Haas never entered a harbor or port because his ship carried explosive materials. *Haas v. Peake*, 525 F. 3d at 1173. Thus, he served exclusively on the open ocean. *Id.*

within the land borders of Vietnam" because there was a low probability that offshore veterans, such as Mr. Haas, were exposed to herbicides – was not unreasonable, "'plainly erroneous, or inconsistent with the regulation.'" *Id.* at 1193 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). The Court will *not* reexamine the validity of VA's interpretation limiting the presumption to brown water or inland waterways – *Haas* affirmed that it was reasonable for VA to distinguish between offshore and inland waterways.

Yet, contrary to the Secretary's brief, *Haas v. Peake* – which dealt with a veteran who only served miles off shore – did not decide the specific question before the Court. As noted above, *Haas v. Peake* made it clear that VA may draw a line between blue and brown water while leaving the specific line drawing to VA discretion. As the parties agreed at oral argument, this case asks the Court to examine how VA exercised that discretion and, more specifically, whether VA's definition of inland waterways – which does not include Da Nang Harbor – is entitled to deference: a question not addressed by *Haas v. Peake*.

### B. Whether VA's interpretation is entitled to deference

An agency's interpretation of its own regulations is entitled to substantial deference by the Court. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200 (2001); *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997). This high degree of deference applies even when that interpretation is first advanced during litigation. *Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005)). Where, as here, the plain language is ambiguous, the Court must consider the reasonableness of the Secretary's regulatory interpretation. *Mason v. Shinseki*, 26 Vet.App. 1, 6 (2012). "[C]ourts should defer to an agency's interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter." *Mulder v. Gibson*, 27 Vet.App. 10, 16 (2014) (citing *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997))). In determining whether VA's interpretation of its regulation is "reasonable," the Court will consider, among other things, the "timing and consistency of the agency's interpretation," *Batterton v. Francis*, 432 U.S. 416, 425-26 n.9 (1977); the "thoroughness evident in its consideration, [and] the validity of its reasoning," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)

9

("[R]ulings, interpretations, and opinions . . . while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment . . . properly resort[ed] [to] for guidance. The weight of such a judgment . . . will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.").

### 1. *The Secretary's Policy*

In the wake of *Haas v. Peake*, VA exercised its discretion to specifically delineate the scope of qualifying service "within the land borders of Vietnam." VA applies the presumption of herbicide exposure to service members that (1) set foot (however briefly) on land in Vietnam; (2) served on inland waterways; and (3) served on a ship with decklogs that reference "anchoring or entering the 'mouth' of" the Cua Viet River, Saigon River, Mekong River Delta, Ganh Rai Bay, and the Rung Sat Special Zone. M21-1MR, pt. IV, subpt. ii., ch. 1, sect. H; Training Letter 10-06. VA defines inland waterways as "rivers, estuaries, canals, and delta areas inside the country, but . . . not . . . open deep-water coastal ports and harbors where there is no evidence of herbicide use." Letter from the Director of VA C&P Service, February 2009; December 2008 C&P Service Bulletin; Training Letter 10-06 (explaining that open deep-water harbors are "are not similar to the rivers, canals, and estuaries that make up the inland waterway system"). VA's policy expressly excludes open deep-water harbors including Cam Ranh Bay, Vung Tau Harbor, and Da Nang Harbor. *Id.*; *see also* December 2008 C&P Service Bulletin. Mr. Gray argues that VA's policy is flawed and maintains that his service aboard the U.S.S. *Roark* constitutes service on an inland waterway. Appellant's Br. at 13-14.

As *Haas v. Peake* observed, the presumption did not apply to Mr. Haas's service miles offshore because spray flight paths did not cross the open ocean. 525 F.3d at 1192 (quoting 73 Fed. Reg. 20,566, 20,568 (Apr. 16, 2008)). *Haas* concluded that VA's distinction between inland and offshore waters based on spraying was reasonably related to the primary predicate of both 38 U.S.C. § 1116(a) and 38 C.F.R. § 3.307(a)(6)(iii): exposure. *Id.* at 1192-93. The Secretary asserts that defining inland waterways to exclude Da Nang Harbor is likewise premised on the probability of exposure based on where Agent Orange was actually sprayed. Oral Arg. at 46:00. However, as will be discussed below, although the Court recognizes VA's authority to distinguish between inland and

offshore waterways, the Court finds that, with respect to Da Nang Harbor, the manner in which VA defines inland waterways is both inconsistent with the regulatory purpose and irrational. Therefore, the Court cannot find VA's definition reasonable or worthy of deference.

*2. VA's interpretation is inconsistent with the regulation.*

As the Board clearly stated in the decision on appeal, VA's policy designates Da Nang Harbor as blue water and, therefore, anchoring in the harbor is insufficient to establish entitlement to the presumption. R. at 16-17. The Secretary contends that, as in *Haas v. Peake*, VA's interpretation is entitled to deference because it reasonably interprets the regulation and has been consistently expressed in VA documents since at least 2008. However, unlike *Haas*, the rationale underlying the designation of Da Nang Harbor here is inconsistent with the identified purpose of the statute and regulation: providing compensation to veterans based on the likelihood of exposure to herbicides. *Haas*, 525 F.3d at 1183, 1185.

Although the Secretary asserts that the exclusion of Da Nang Harbor from inland waterway designation was explained in statements in the Federal Register, these documents do not reveal any insights specifically pertaining to the likelihood of exposure in Da Nang Harbor. Oral Arg. at 58:00. They all reiterate VA's basic premise that herbicides were sprayed on land and not in the open waters "off the shore of Vietnam." Monetary Allowance Under 38 U.S.C. § 1805 for a Child Suffering From Spina Bifida Who is a Child of a Vietnam Veteran, 62 Fed. Reg. 51,274 (Sept. 30, 1997); *see also* Presumption of Exposure to Herbicides for Blue Water Navy Vietnam Veterans Not Supported, 77 Fed. Reg. 76,170 (Dec. 26, 2012); Notice of Proposed Rulemaking on Definition of Service in the Republic of Vietnam, 73 Fed. Reg. 20,566, 20,568 (Apr. 16, 2008). But they shed no light on

the murky area where inland waterways open to the ocean and the brown water mixes with the blue.[7] *Id.* Da Nang Harbor is one such area.

The Secretary seeks to support the definition of inland waterways through three primary sources: (1) The M21-1MR; (2) December 2008 C&P Service Bulletin; and (3) Training Letter 10-06. These documents all clearly state that VA does not consider Da Nang Harbor an inland waterway. Yet, contrary to the Secretary's assertions, they do not explain how VA's designation of Da Nang Harbor relates to the probability of exposure based on herbicide use. In explaining that VA considers open water ports such as Da Nang to be extensions of ocean waters rather than inland waterways, Training Letter 10-06 observes that "[the distinction] is illustrated by a quote from the 1967 ship's history of the U.S.S. *Cleveland* (LPD-7), which states: 'Da Nang Harbor is easy to enter due to being open to the sea.'" Training Letter 10-06, at 5. There is no discussion in the manual, letter, or bulletin of the likelihood of herbicide exposure based on spraying. Rather, it appears that VA designated Da Nang Harbor as blue water because it is an open deep-water harbor that is easy to sail into. At oral argument, the Secretary was asked to clarify this reasoning by comparing VA's determination that Quy Nhon Bay was an inland waterway but Da Nang Harbor was considered

---

[7] At oral argument, the Secretary referred to an Institute of Medicine (IOM) study that "confirmed" that there was no likelihood of exposure to herbicides in Da Nang Harbor. Oral Arg. at 41:40, 69:00. The Court notes that this study was not in the record before the Board but will take judicial notice of the document to the extent the Secretary relies on it to support his definition of inland waterways as excluding Da Nang Harbor. *See Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991); *see also Tagupa v. Shinseki*, 27 Vet.App. 95, 100 (2014). The Secretary has clearly expressed that the definition of inland waterways is based on the likelihood of exposure evidenced by *spraying*. *Id.* at 38:00, 41:25, 44:00. In assessing the likelihood of exposure to herbicides, the Committee on Blue Water Navy Vietnam Veterans and Agent Orange Exposure found that "the opportunity for Blue Water Navy personnel to have experienced inhalation exposure cannot be entirely discounted but would have been limited to instances when vessels were operating close to (within a few kilometers of) shore in locations where and at times when spraying occurred." INST. OF MED. OF THE NAT'L ACADS., BLUE WATER NAVY VIETNAM VETERANS AND AGENT ORANGE EXPOSURE 37 (2011). The committee acknowledged that instances of this kind of exposure might be rare, but may not be discounted "without further, labor-intensive efforts to coordinate Ranch Hand mission flight paths with Blue Water Navy ship locations." *Id.* at 95. To the extent the Secretary relied on this report at oral argument, the general and inconclusive nature of the report falls short of the Secretary's assertion that the report specifically "confirmed" that there was no likelihood of exposure to herbicides in Da Nang Harbor.

offshore waters.[8] Oral Arg. at 44:58. The Secretary emphasized that open deep-water harbors were not inland waterways and proffered that VA may have determined that Quy Nhon was shallower or more narrow than Da Nang Harbor. *Id.* The Secretary did not offer any evidence that depth or ease of entry was significant to the likelihood of spraying or that the distinction between the two bodies of water was made based on an assessment of herbicide use in and around them. Thus, the Court is left to conclude that VA did indeed designate Da Nang as blue water based on ease of entry despite a lack of discernable relationship between ease of entry or depth and the probability of exposure based on herbicide use. Absent a connection to the probability of exposure based on spraying, the Court finds the rationale supporting VA's designation of Da Nang Harbor is inconsistent with the regulation's purpose of compensation based on the probability of exposure. *See Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 150-51 (1991) ( holding that an agency interpretation is reasonable "so long as the interpretation 'sensibly conforms to the purpose and the wording of the regulations'" (quoting *Ehlert v. United States*, 402 U.S. 99, 105 (1991))).

*3. VA's interpretation is irrational.*

The Court is mindful of the challenges VA faces in defining the scope of the presumption with regard to waterways that open to the ocean. However, although the presumption is purportedly applied where there is evidence of spraying, the documents the Secretary relies upon are devoid of any indication that VA made a fact-based assessment of the probability of exposure in Da Nang Harbor from aerial spraying. Instead Training Letter 10-06, the M21-1MR, and the December C&P Bulletin reflect that VA based its designation of Da Nang Harbor on geographical characteristics – depth and ease of entry – and not on spraying. After a review of VA's line-drawing related to waterways that open to the ocean, the Court is unpersuaded that VA's definition of inland waterways reflects the Agency's fair and considered judgment.

---

[8] A "bay" is defined as "an inlet of the sea or other body of water usually smaller than a gulf" or "a small body of water set off from the main body." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 98 (10th ed.) (1993). A "harbor" is defined as "a part of a body of water protected and deep enough to furnish anchorage; especially one with port facilities." *Id.* at 529. The Court finds no meaningful difference between the geographic terms bay and harbor that would distinguish VA's designation of Quy Nhon and Ganh Rai Bays as brown water and Da Nang Harbor as blue.

First, the Secretary asserts that each designation was based on where Agent Orange was sprayed but fails to identify any specific indicia, criteria, or evidence that VA relies on to classify bodies of water. The December 2008 C&P Bulletin declares that "Da Nang harbor and *all* other harbors along the Vietnam Coastline" are blue water, but in contradiction to the policy advanced by the Secretary, VA designates both Quy Nhon Bay and Ganh Rai Bay as inland waterways. The only "parameters" the Secretary offered were that open deep-water harbors are not inland because they are offshore. Oral Arg. at 44:45. Thus, Quy Nhon was an inland waterway because it was "perhaps more narrow or more shallow" than Da Nang. The Court notes that the Secretary stated that "perhaps" Quy Nhon Bay was brown water because it was more narrow or more shallow than Da Nang Harbor without identifying any specific evidence or document for support, further suggesting that VA's policy is like a ship without an anchor: aimless and adrift from the regulation. Oral Arg. at 45:00. The Secretary did not provide any evidence or documentation related to spraying or other avenues of herbicide contamination that distinguished Quy Nhon or Ganh Rai from Da Nang. Reviewing maps of each of these bodies of water,[9] the Court cannot discern any rhyme or reason in VA's determination that Quy Nhon Bay and Ganh Rai Bay are brown water but Vung Tau Harbor – which appears to be *inside* Ganh Rai Bay – Da Nang Harbor, and Cam Ranh Bay are blue water.[10]

Second, VA's rigid line-drawing in Da Nang Harbor contrasts markedly with the approach VA takes to mouths of rivers. Training Letter 10-06 notes that "it is not practical to draw a line between the mouth of a river and the South China Sea." VA Training Letter 10-06, at 8. Thus, a

---

[9] Pursuant to a Court order prior to oral argument, the parties jointly submitted maps of waterways relevant to this appeal and stipulated that the maps have copyright references to the National Oceanic and Atmospheric Administration and the U.S. Navy and thus, the Court may take judicial notice of them. Joint Response at 1; Oral Arg. at 10:57; *see Smith*, 1 Vet.App. at 238 ("Courts may take judicial notice of facts not subject to reasonable dispute." (citing FED. R. EVID. 201(b))).

[10] Even if the Court were to accept ease of entry as a valid rationale, it does not appear that VA has consistently followed this rationale. For example, Ganh Rai Bay has a much larger entrance than Da Nang Harbor and Cam Ranh Bay, yet Ganh Rai Bay is considered brown water while Da Nang and Cam Ranh are blue water. The entrances to a number of rivers seem likewise wide enough to allow for easy entry, particularly in the Mekong Delta. Thus, even if VA's entry rationale held water, it does not appear to be applied consistently.

veteran may qualify for brown water service if the ship's deck logs reference anchoring or entering the "'mouth'" of the "'Cua Viet River,' 'Saigon River,' 'Mekong River Delta,' and 'Ganh Rai Bay' or 'Rung Sat Special Zone.'" VA Training Letter 10-06, at 7-8 (explaining that applying the benefit of the doubt doctrine, "evidence of the vessel's presence in a river's mouth is sufficient to establish the presumption of exposure for [v]eterans aboard that ship"). The Secretary concedes that VA does not have a specific definition for "mouth" of a river; instead, counsel for the Secretary stated that VA "would rely on the deck records to indicate . . . anchorage or entrance into the mouth of the river in order to establish presence in the mouth of the river." Oral Arg. at 51:53. Depending on the deck log's use of the word "mouth," the "borders" of Vietnam may extend well beyond the physical land mass around a river mouth.[11] VA's varying and inconsistent application of the presumption reflects a struggle to classify the gray area where brown inland waterways meet blue offshore waters.

Unlike in *Haas v. Peake*, the seemingly arbitrary and inconsistent results here are not a tolerable by-product of line-drawing. *Haas* deferred to VA's line-drawing as a proxy for exposure and acknowledged that line-drawing necessarily led to over- and under-inclusiveness, which alone did not render the line unreasonable. However, here, the arbitrary outcomes are not the result of a clear consistent rule anchored to the regulation. The inconsistent application of the presumption to waterways that open to the ocean flows from VA's improper reliance on factors unrelated to the regulation – like ease of entry – to draw the line. The Court appreciates that VA faces a difficult task. However, VA is not free to label bodies of water by flipping a coin, yet the outcomes here appear just as arbitrary.

---

[11] Here, the record contains deck logs from the U.S.S. *Roark* dated April 1972, during Mr. Gray's period of service, and one entry contains the following notation: "operating off of the Cua Viet River Mouth. . . . The ship is at general quarters, material condition zebra and condition of the readiness I are set through out [sic] the ship. The ship is darkened." R. at 617. Moreover, Mr. Gray's service records also note that the U.S.S. *Roark* was "firing a night harassment mission in the vicinity of the Cua Viet River." R. at 781. In light of the Secretary's stated policy to rely on deck records to determine a ship's location and the Secretary's concession at oral argument that a river mouth does not have definite boundaries, the Court questions why the Board did not address this reasonably raised issue which may have qualified Mr. Gray for the presumption. *See* Training Letter 10-06 (noting that with regard to the presumption, the benefit of the doubt should be applied where deck logs reflect that a ship anchored in or entered the mouth of the Cua Viet River).

Recognizing "[t]hat [a] generous degree of deference is due to an agency interpretation of its own regulations even when that interpretation is offered in the very litigation in which the argument in favor of deference is made," *Cathedral Candle Co.*, 400 F.3d at 1364 (citing *Auer*, 519 U.S. at 461-62), and in light of *Haas v. Peake*, the Court here considered the Agency's interpretation carefully. However, unlike in *Auer* and *Cathedral Candle Co.*, here VA's interpretation of its regulation is both inconsistent with the regulatory purpose and irrational; thus, the Court has "'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *Cathedral Candle Co.*, 400 F.3d at 1364 (quoting *Auer*, 519 U.S. at 462). Therefore, VA's interpretation is "unworthy of deference." *Auer*, 519 U.S. at 462.

C. Remedy

Mr. Gray argues that the Court should adopt the definition of inland waterways espoused in the U.N. Convention on the Territorial and Contiguous Zone. Appellant's Br. at 18. He asserts that under the Convention, Da Nang Harbor is an inland waterway within the borders of the Republic of Vietnam, and therefore, reversal would be the appropriate remedy. *Id.* He argues that the Court and VA are bound by the Convention definition because the U.S. Supreme Court adopted that definition in *Louisiana*, *supra*, and thus, the definition applies to all uses of the term "inland waterways" in U.S. law. Appellant's Br. at 15-16; Oral Arg. at 05:20. The Court disagrees.

Contrary to Mr. Gray's argument, the Supreme Court adopted the Convention definition for a specific purpose – not as the definition for "inland waterways" in all applications of the term in U.S. law. *Louisiana*, 394 U.S. at 34. *Louisiana* recognized that, four years earlier, *United States v. California*, 381 U.S. 139 (1965), adopted the convention definition "'for purposes of the Submerged Lands Act.'" In *California*, the Supreme Court interpreted "inland waterways" as it was used in the Submerged Lands Act. *Id.* at 164-66. The Supreme Court determined that Congress specifically left the definition of "inland waterways" in the Submerged Lands Act to the courts to define and that the Convention offered the "best and most workable" definition available. *Id.* at 165. The Supreme Court accordingly adopted that definition "for the purposes of the Submerged Lands Act." *Id.* The Supreme Court gave no indication in either *California* or *Louisiana* that it intended for the Convention to apply every time the term "inland waterways" was used in U.S. law. Morever, as the Federal Circuit noted in *Haas*, there is no indication in the language of section 1116(a) or its

16

legislative history that Congress intended to specifically define the reach of a sovereign nation and therefore the phrase "served in the Republic of Vietnam" was ambiguous. 525 F.3d at 1184. Unlike in the Submerged Lands Act, here the discretion to define and interpret the scope of the regulation was given to the Agency, not the Court. *See Haas v. Peake*, 525 F.3d at 1180 (noting that "there is no indication during the legislative process [for the Agent Orange Act] that Congress focused on the precise scope that should be attached to the statutory phrase 'served in the Republic of Vietnam'").

There is no indication that in using the term "inland waterways" VA intended to adopt the Convention definition, and the Secretary expressly denied any intent to do so at oral argument. Although the Court finds VA's definition of inland waterways irrational and not entitled to deference, VA retains its discretionary authority to define the scope of the presumption. The Court declines to usurp the Agency's authority and impose its own line. Rather, the Court will vacate the Board decision on appeal as arbitrary and capricious because the decision was based on VA's flawed interpretation of 38 C.F.R. § 3.307(a)(6)(iii). The Court will remand the matter for VA to reevaluate its definition of inland waterways – particularly as it applies to Da Nang Harbor – and exercise its fair and considered judgment to define inland waterways in a manner consistent with the regulation's emphasis on the probability of exposure.

### D. Equal Protection Argument

As stated previously, Mr. Gray argues that reversal is warranted on Equal Protection grounds. Appellant's Br. at 18-19. Specifically, he contends that VA violated the Equal Protection Clause of the Fifth Amendment of the U.S. Constitution because a Board decision in another veteran's case found that Da Nang Harbor was an inland waterway and awarded that veteran the presumption. *Id.*

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. The Federal Circuit has held that Due Process protections apply to disability compensation proceedings before the Board. *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009). Although the Fifth Amendment, which applies to the Federal Government, "does not contain an equal protection clause as does the Fourteenth Amendment[,] which applies only to the states," "discrimination may be so unjustifiable as to be violative of due process" under the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see Bowers v. Shinseki*, 26 Vet.App. 201, 208 n.11 (2013); *Robinson v.*

17

*Brown*, 9 Vet.App. 398, 401 (1996). "[A] party challenging a law on equal protection grounds 'may make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Reeves v. West*, 11 Vet.App. 255, 259 (1998) (quoting *Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986)).  The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

To demonstrate that he was similarly situated to the other veteran, Mr. Gray submits a November 2009 Board decision in another veteran's case.  Appellant's Br. at 19-20; R. at 3.  A review of that Board decision reflects that in November 2009 the Board found that Da Nang Harbor was an inland waterway for purposes of the regulation (R. at 320), yet the Board concluded that the presumption applied because "there is credible evidence that the [v]eteran *set foot on land* in Vietnam during the Vietnam Era."  (R. at 320 (emphasis added)).  The specific facts before the November 2009 Board decision are not before the Court; and thus, the Court finds that the Board's indication that the veteran set foot on land ambiguous.  The veteran in that case served aboard the U.S.S. *Oklahoma City*, which appears on the list of ships with inland waterway service because it "docked in Saigon during July 21-24, 1964."  Agent Orange: Alphabetized Ships List, U.S. Department of Veterans Affairs, http://www.publichealth.va.gov/ (Accessed Mar. 17, 2015).  Thus, it is unclear from the Board decision whether the "credible evidence" the Board relied on to afford the veteran the presumption was his ship's anchoring in Da Nang Harbor alone or some other evidence reflecting that the veteran had qualifying inland service, such as setting foot on land or presence in other inland waterways.  Therefore, the Court cannot determine whether Mr. Gray is similarly situated to the veteran referenced in the November 2009 Board decision.[12] Accordingly, the November 2009 Board decision cannot form the basis of or provide support for an equal protection challenge, and Mr. Gray's argument on this point must fail.

---

[12]  Even if it were clear that Mr. Gray is similarly situated to the veteran referenced in the November 2009 Board decision, it is well established that Board decisions are not precedential or binding on other veterans.  *See* 38 C.F.R. § 20.1303 (2014);  *see also Lynch v. Gober*, 11 Vet.App. 22, 27 (1997), *vacated on other grounds sub nom. Lynch v. West*, 178 F.3d 1312 (Fed. Cir. 1998); *Hillyard v. Derwinski*, 1 Vet.App. 349, 351 (1999).

## IV. CONCLUSION

Upon consideration of the foregoing, the portion of the November 6, 2013, Board decision denying Mr. Gray's claim for hypertension is AFFIRMED, and the remaining claims for diabetes, neuropathy of the left and right lower extremities, ischemic heart disease, and erectile dysfunction are VACATED and REMANDED for further proceedings consistent with this decision.