﻿Citation Nr: 18115442
Decision Date: 07/02/18 Archive Date: 07/02/18

DOCKET NO. 16-16 703
DATE: July 2, 2018
REMANDED
Service connection for a skin disorder, including psoriasis, dermatitis, and actinic keratosis, is remanded. 
Service connection for type II diabetes mellitus is remanded. 
 
REASONS FOR REMAND
The Veteran served on active duty from January 1961 to June 1981. 
This matter comes before the Board from an October 2015 rating decision. 
The Veteran appeared at a videoconference hearing before the undersigned Veterans Law Judge in April 2018. The record was held open for 60 days for the submission of additional evidence, which was received in May 2018.
Although separate claims pertaining to skin conditions were certified on appeal, the Board has combined them into one issue with a broader scope. See Clemons v. Shinseki, 23 Vet. App. 1 (2009). 
1. Service connection for type II diabetes mellitus.
The Veteran seeks service connection for diabetes mellitus as a result of exposure to herbicide agents in Vietnam. He asserts that he not only served on vessels operating in the inland waterways but also had shore duty in Vietnam. 
At the Board hearing in April 2018, he stated that in association with his duties as a hydraulic and air plane specialist on aircraft during service, he served on board vessels to include the USS Card, to include in May 1964, the USS Core, to include in June 1965. The Board notes that service in the inland waterways can meet the definition of service in Vietnam, warranting a presumption of exposure to Agent Orange and the presumption of service connection for the diseases listed in 38 U.S.C. § 1116(a)(1) and 38 C.F.R. § 3.309(e) (including diabetes mellitus). See Gray v. McDonald, 27 Vet. App. 313 (2015) and VA’s Adjudication Procedure Manual, M21-1, IV.ii.1.H.2.a. 
The Veteran’s DD FORM 214 reflects his military occupational specialty (MOS) was C2/E2 and A-73 SYSTEM ORGANIZATION MAINTENCANCE TECHNICIAN. His awards and decorations include a Vietnam Campaign Medal, a Vietnam Service Medal, and a Republic of Vietnam Meritorious Unit Citation Civic Actions Medal. Service personnel records (SPRs), to include a 1966 performance evaluation while stationed at FAU COMFAIRALAMEDA DET A, reflect that he was an escort for aircraft being shipped to and from operating activities stateside and in west pacific areas. 
The Board notes that VA maintains a directory of ships entitled “Navy and Coast Guard Ships Associated with Service in Vietnam and Exposure to Herbicide Agents.” The list includes ships that operated primarily or exclusively on Vietnam’s inland waterways, temporarily on Vietnam’s inland waterways or docked to the shore, and on Vietnam’s close coastal waters for extended periods (with evidence that crew members went ashore or that smaller vessels from the ship went ashore regularly). The list notes that “Ships operating temporarily on Vietnam’s inland waterways,” include the USS Card (ACV-11) ([Escort Aircraft Carrier] mined, sunk, and salvaged in Saigon River Harbor during May 1964), and the USS Core (ACV-13) (travelled on Saigon River to deliver aircraft to Saigon during June 1965). However, the Veteran’s SPRs are negative for reference to service on either vessel. 
An August 2015 Formal Finding notes a lack of information required to attempt to corroborate service in Vietnam or its coastal and/or inland waterways, in November 2015. However, the Veteran submitted copy of a temporary additional duty (TAD) order from the COMMANDER FLEET AIR ALAMEDA reflecting that in about February 1967, the USS Croatan (T-AKV 43) was deployed to the western pacific for approximately 50 days, and an April 1967 MEMORANDUM ENDORSEMENT notes that the USS Croatan “entered the Combat Zone, Vietnam Area,” on March 14, 1967 and remained in the zone until March 21, 1967, for a total of eight days. 
Although the Veteran’s name is not discernable on the order, the copy is only partially legible. Although the Veteran’s SPRs do not reference service on board the USS Croatan, or on any of the other vessels he referenced at the hearing, to include the Golden Bear and Carolina, the January 2016 statement of the case does not appear to have considered the copy of the TAD order submitted by the Veteran. The Board notes that SPRs include a record of the Commander Fleet Air Alameda reflecting the Veteran served aboard the USS James Lykes when it was deployed from Naval Air Station Alameda, California, to Cubi Point Naval Air Station in 1965. As such, an attempt must be made to verify the Veteran’s claimed exposure through the U.S. Joint Services Records and Research Center (JSRRC). 
In addition, in view of the Veteran’s testimony that he participated in covert operations involving the movement of ships between 1965 and 1967, to include having gone ashore with armed marines on their patrols on at least two occasions, a request for information concerning alleged involvement in covert (classified) operations should be directed to the United States Special Operations Command. See M21-1, IV.ii.1.I.5 (Developing Claims Based on Participation in Special Operations Incidents). 
2. Service connection for a skin disorder, including psoriasis, dermatitis, and acne keratosis. 
Moreover, at the Board hearing, the Veteran stated that a skin disorder, with symptoms to include itching, had its onset in approximately 1967, that medicines/salves were prescribed during service, and that he has had the same symptoms ever since. Private treatment records in February 2015 reflect psoriasis in June 2014, and May 2018 records reflect dermatitis in 2004 and actinic keratosis in 2013. The Board notes that even when a disease is not found to be presumptively service-connected based on herbicide exposure, the Veteran is not precluded from establishing service connection with proof of direct causation. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). In view of the evidence and the Veteran’s assertions, VA examination is warranted with respect to the nature and etiology of a skin disorder. 
The matters are REMANDED for the following action:
1. Following the guidance in VA Adjudication Procedure Manual M21-1, IV.ii.1.I.5., provide the Veteran with a notification letter containing the Special Operations development paragraph. Complete and submit a Special Operations Forces Incident document to the United States Special Operations Command (USSOCOM) to research the Veteran’s involvement in covert operations in Vietnam. Make as many requests as necessary to encompass the entire time period claimed by the Veteran. 
2. Contact the National Personnel Records Center (NPRC), JSRRC, and/or any other appropriate agencies, to obtain all records of the Veteran’s assignments, whether permanent or temporary duty stations; all travel orders; pay stubs that reflect special pay status; travel vouchers; dislocation allowances; and all TAD and temporary duty (TDY) orders. It is specifically noted that the Veteran reports that he was often on vessels operating on inland waterways of Vietnam, that he had shore duty in Vietnam on many occasions, and that SPRs show he was an escort for aircraft being shipped to and from operating activities in west pacific areas. 
Efforts to obtain the foregoing records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified by each Federal department or agency from whom they are sought and this should be documented for the record. 
3. Additionally, request that JSRRC, or any other official source, investigate and attempt to verify the Veteran’s reports of alleged exposure to herbicides in the Republic of Vietnam from 1965 to 1967, to include service on board the USS Card, including in May 1964 and the USS Core, including in June 1965. JSRRC must also be asked to provide the histories of the Veteran’s unit(s) from 1965 to 967, and indicate whether it was regular practice for these units, or elements of the units, to travel to the Republic of Vietnam in the course of their duties. If more detailed information is needed for this research, the Veteran should be given an opportunity to provide it. 
4. Schedule the Veteran for a VA skin examination by an appropriate medical professional. The entire claims file must be reviewed by the examiner. The examiner is to conduct all indicated tests. 
The examiner should first identify all of the Veteran’s skin disorders that he has, or has had since the claim was filed in February 2015, to include possible diagnoses of psoriasis, dermatitis, and actinic keratosis.
The examiner should then provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that a skin disorder had its onset during, or is otherwise related to, service.
If herbicide exposure is presumptively established, the opinion should include consideration of that possible cause. 
(Continued on the next page)
 
A rationale should be provided for any opinion rendered.
 
RYAN T. KESSEL
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD M. Taylor, Counsel