# United States Court of Appeals for the Federal Circuit

_____

**ROBERT H. GRAY,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

_____

2016-1782

_____

Petition for review pursuant to 38 U.S.C. § 502.

-------------------------------------------------------------------------

**BLUE WATER NAVY VIETNAM VETERANS ASSOCIATION,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

_____

2016-1793

_____

Petition for review pursuant to 38 U.S.C. § 502.

_____

Decided:  November 16, 2017

_____

MICHAEL E. WILDHABER, Veterans Law Office of Michael E. Wildhaber, Washington, DC, argued for petitioner in 16-1782.  Also represented by SHANNON LYNNE BREWER, Hill & Ponton, P.A., Deland, FL.

JOHN B. WELLS, Law Office of John B. Wells, Slidell, LA, argued for petitioner in 16-1793.

ERIC PETER BRUSKIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; BRIAN D. GRIFFIN, MARTIN JAMES SENDEK, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before PROST, *Chief Judge,* DYK, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Opinion dissenting in part and concurring in the judgment filed by *Circuit Judge* DYK.

O'MALLEY, *Circuit Judge.*

Robert H. Gray ("Gray") and Blue Water Navy Vietnam Veterans Association ("Blue Water") (collectively, "Petitioners") petition this court under 38 U.S.C. § 502 to review certain revisions the Department of Veterans Affairs ("VA") made to its Adjudication Procedures Manual M21-1 ("M21-1 Manual") in February 2016.  These revisions pertain to the VA's interpretation of provisions of the Agent Orange Act of 1991 (the "Agent Orange Act"), Pub. L. No. 102-4, 105 Stat. 11, codified as amended at 38 U.S.C. § 1116, as implemented via regulations at 38

C.F.R. §§ 3.307(a)(6), 3.309(e).  Because the VA's revisions are not agency actions reviewable under § 502, we dismiss for lack of jurisdiction.

## I. Background

### A. The Agent Orange Act

To receive disability compensation based on service, a veteran must demonstrate that his or her disability was service-connected, meaning that it was "incurred or aggravated . . . in line of duty in the active military, naval, or air service."  38 U.S.C. § 101(16).  Establishing service connection generally requires three elements:  "'(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'— the so-called 'nexus' requirement."  *Holton v. Shinseki*, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).  The claimant has the responsibility to support a claim for service connection.  38 U.S.C. § 5107(a).

Congress has enacted presumptive service connection laws to protect certain veterans who faced exposure to chemical toxins during service, but would find it difficult or impossible to satisfy the obligation to prove a "nexus" between their exposure to toxins and their disease or injury.  Among these laws is the Agent Orange Act, which established a framework for the adjudication of disability compensation claims for Vietnam War veterans with diseases medically linked to herbicide exposure in the Republic of Vietnam during the Vietnam War.  Under the Agent Orange Act, any veteran who "served in the Republic of Vietnam" during the Vietnam era and who suffers from any of certain designated diseases "shall be presumed to have been exposed during such service" to herbicides "unless there is affirmative evidence to establish that the veteran was not exposed."  *Id.* § 1116(f).  The

Agent Orange Act also established several statutory presumptions and a methodology for the VA to create additional regulatory presumptions that certain diseases were "incurred in or aggravated by" a veteran's service in Vietnam. *Id.* § 1116(a). The VA then proceeded to determine which diseases would qualify for presumptive service connection and to define what service "in the Republic of Vietnam" encompasses.

In May 1993, the VA issued regulations establishing presumptive service connection for certain diseases associated with exposure to herbicides in Vietnam. The relevant regulation conditions application of the presumption on the claimant having "served in the Republic of Vietnam," including "service in the waters offshore and service in other locations *if* the conditions of service involved duty or visitation in the Republic of Vietnam." 38 C.F.R. § 3.307(a)(6)(iii) (1993) (emphasis added); *see* Diseases Associated with Service in the Republic of Vietnam, 58 Fed. Reg. 29,107, 29,109 (May 19, 1993). Absent on-land service, the VA concluded that the statute and regulation do not authorize presumptive service connection for those veterans serving in the open waters surrounding Vietnam—known as "Blue Water" veterans. We considered the VA's position in *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008), and concluded that it was neither an unreasonable interpretation of the congressionally mandated presumption nor of the VA's own regulations relating thereto. *Id.* at 1190–95.

The dispute now before us arises from the VA's decision not just to exclude open water service from the definition of service in the "Republic of Vietnam," but to also exclude those veterans who served in bays, harbors, and ports of Vietnam from presumptive service connection. In other words, absent documented service on the land mass of Vietnam or in its "inland waterways"—defined as rivers and streams ending at the mouth of the river or stream, and excluding any larger bodies of water

into which those inland waters flow—the VA has concluded that no presumptive service connection is to be applied. The VA did not implement this additional restriction by way of notice and comment regulation as it did its open waters restriction, and it has not published its view on this issue in the Federal Register. Instead, the VA has incorporated this new restriction into the M21-1 Manual, which directs VA adjudicators regarding the proper handling of disability claims from Vietnam-era veterans. It is this Manual revision which Gray challenges and asks us to declare invalid.

## B. The M21-1 Manual and the 2016 Revision

As we explained recently, "[t]he VA consolidates its [internal] policy and procedures into one resource known as the M21-1 Manual." *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 859 F.3d 1072, 1074 (Fed. Cir. 2017) ("*DAV*"). The M21-1 Manual "is an internal manual used to convey guidance to VA adjudicators." VA Adjudications Manual, M21-1; Rescission of Manual M21-1 Provisions Related To Exposure to Herbicides Based on Receipt of the Vietnam Service Medal, 72 Fed. Reg. 66,218, 66,219 (Nov. 27, 2007) [hereinafter 2007 M21-1 Manual Revisions]. "The M21-1 Manual provides guidance to Veterans Benefits Administration ('VBA') employees and stakeholders to allow the VBA to process claims benefits quicker and with higher accuracy." *DAV*, 859 F.3d at 1074 (internal quotation marks omitted). The M21-1 Manual is available to the public through the KnowVA website. *See* http://www.knowva.ebenefits.va.gov/system/ templates/selfservice/va_ss/#!portal/554400000001018/ topic/554400000004049/M21-1-Adjudication-Procedures-Manual. The M21-1 Manual provisions are not binding on anyone other than the VBA employees, however; notably, the Board of Veterans' Appeals ("Board") is not bound by any directives in the M21-1 Manual and need not defer to any administrator's adherence to those guidelines. *See* 38 C.F.R. § 19.5.

In 2007, Gray filed a claim for disability compensation for a number of medical conditions allegedly arising out of his naval service in Da Nang Harbor. *Gray v. McDonald*, 27 Vet. App. 313, 316 (2015). At the time, the M21-1 Manual defined "service in the Republic of Vietnam (RVN)" as "service in the RVN or its inland waterways." M21-1 Manual, part IV, ch. 1, ¶ H.28.a (2005). In a February 2009 letter, the VA further explained that it interpreted "inland waterways" to mean "rivers, estuaries, canals, and delta areas inside the country, but . . . not . . . open deep-water coastal ports and harbors where there is no evidence of herbicide use." *Gray*, 27 Vet. App. at 321–22 (alterations in original) (quoting Letter from the Director of VA C & P Service, February 2009, and December 2008 C & P Service Bulletin).

After the VA denied Gray's claim under this interpretation, he appealed to the U.S. Court of Appeals for Veterans Claims ("the Veterans Court"). *Id.* at 318. The Veterans Court concluded that the VA's definition of "inland waterway" was "both inconsistent with the regulatory purpose and irrational," in part because the VA had offered no meaningful explanation for why it classified some bays as inland waterways but not others. *Id.* at 322–25. The Veterans Court remanded the matter to the VA with instructions to reevaluate its definition of "inland waterway" to be consistent with § 3.307(a)(6)(iii). *Id.* at 326–27.

Following the remand, the VA surveyed the available scientific evidence, including documents submitted in July 2015 by counsel for Blue Water, an organization representing a number of Blue Water veterans. In a draft document it issued on January 15, 2016, the VA acknowledged that it had failed to "clearly explain the basis" for its previous classifications. J.A. 203. The VA concluded that, because "Agent Orange was not sprayed over Vietnam's offshore waters," the VA did "not have medical or scientific evidence to support a presumption of exposure

for service on the offshore open waters," which it defined as "the high seas and any coastal or other water feature, such as a bay, inlet, or harbor, containing salty or brackish water and subject to regular tidal influence."  J.A. 203–04.

Accordingly, in February 2016, the VA published a "Memorandum of Changes" announcing a change in policy and an accompanying revision of the M21-1 Manual. J.A. 207.  The revised M21-1 Manual defines "inland waterways" as follows:

> ***Inland waterways*** are fresh water rivers, streams, and canals, and similar waterways.  Because these waterways are distinct from ocean waters and related coastal features, service in these waterways is service in the [Republic of Vietnam].  VA considers inland waterways to end at their mouth or junction to other offshore water features, as described below.  For rivers and other waterways ending on the coastline, the end of the inland waterway will be determined by drawing straight lines across the opening in the landmass leading to the open ocean or other offshore feature, such as a bay or inlet.  For the Mekong and other rivers with prominent deltas, the end of the inland waterways will be determined by drawing a line across each opening in the landmass leading to the open ocean.

> ***Note:*** Inland waterway service is also referred to as ***brown-water Navy service***.

M21-1 Manual, part IV, subpart ii, ch. 1, ¶ H.2.a (2016) (emphasis in original).  By virtue of this manual change, the VA instructed all claims processors in its 56 regional offices to exclude all Navy personnel who served outside the now-defined "inland waterways" of Vietnam—i.e., in its ports, harbors, and open waters—from presumptive service connection for diseases or illnesses connected with

exposure to Agent Orange. Thus, the VA instructed its adjudicators to exclude all service in ports, harbors, and bays from presumptive service connection, rather than service in only some of those waterways. Petitioners seek review of this revision pursuant to 38 U.S.C. § 502.

## II. Discussion

"A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists." *DAV*, 859 F.3d at 1075 (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)). Under 38 U.S.C. § 502, we have jurisdiction to review only those agency actions that are subject to 5 U.S.C. §§ 552(a)(1) and 553. We *do not* have jurisdiction to review actions that fall under § 552(a)(2). "Section 553 refers to agency rulemaking that must comply with notice-and-comment procedures under the Administrative Procedure Act." *DAV*, 859 F.3d at 1075. The parties agree that § 553 is not at issue in this proceeding. The parties instead focus on § 552; their debate is whether the manual provisions challenged in this action fall under § 552(a)(1), giving us authority to consider them in the context of this action, or § 552(a)(2), prohibiting our review here.

In relevant part, § 552(a)(1) provides:

Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

. . . .

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

§ 552(a)(2) provides that:

> Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—
>
> . . . .
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and]
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public;
>
> . . . .

The government contends that, because M21-1 Manual provisions are expressly governed by § 552(a)(2), this court may not review them unless and until they are applied in and govern the resolution of an individual action. This is so, according to the government, regardless of how interpretive or policy-laden the judgments are that resulted in the formulation of those manual provisions. Gray contends that the government's view of § 552 is too myopic. He contends that a manual provision can fall under § 552(a)(1) where, regardless of its designation, it constitutes an interpretive rule of general applicability that adversely affects the rights of an entire class of Vietnam veterans. In other words, Gray contends that it is not the way in which the VA chooses to implement its policies and statutory interpretations that implicates our jurisdiction, it is the impact of what the VA is doing that matters. While Gray's points are not without force—and the VA even concedes that the impact of its manual changes is both real and far reaching—we conclude that we may not review Gray's challenge in the context of this action.

We recently considered a challenge under § 502 to another revision to the M21-1 Manual. *DAV*, 859 F.3d at

1074–75. The Manual revision at issue in *DAV* provided guidance regarding the term "medically unexplained chronic multisymptom illness," which appeared in a statute and regulation related to presumptive service connection for Persian Gulf War veterans. *Id.* (citing 38 U.S.C. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(ii). In determining whether § 502 granted this court jurisdiction to consider a direct challenge to the Manual revision, we identified "three relevant factors to whether an agency action constitutes substantive rulemaking under the APA: '(1) the [a]gency's own characterization of the action; (2) whether the action was published in the Federal Register or the Code of Federal Regulations; and (3) whether the action has binding effects on private parties or on the agency.'" *Id.* at 1077 (alteration in original) (quoting *Molycorp, Inc. v. EPA*, 197 F.3d 543, 545 (D.C. Cir. 1999)). We noted that "the ultimate focus of the inquiry is whether the agency action partakes of the fundamental characteristic of a regulation, i.e., that it has the force of law." *Id.* (quoting *Molycorp*, 197 F.3d at 545). Applying these factors, we found that the challenged Manual revisions "d[id] not amount to a § 553 rulemaking and d[id] not carry the force of law." *Id.*

We then held that the revisions "clearly f[e]ll under" § 552(a)(2) and not § 552(a)(1). *Id.* at 1078. We explained that "[w]here, as here, manual provisions are interpretations adopted by the agency, not published in the Federal Register, not binding on the Board itself, and contained within an administrative staff manual, they fall within § 552(a)(2)—not § 552(a)(1)." *Id.* We concluded that this was so, regardless of the extent to which the manual provision might be considered interpretive or a statement of policy. *Id.* On these grounds, we dismissed the challenge for lack of jurisdiction. *Id.*

Our holding in *DAV* compels the same result here. Like that in *DAV*, the manual provision at issue here is an interpretation adopted by the agency; the M21-1

Manual "convey[s] guidance to VA adjudicators," but "[i]t is not intended to establish substantive rules." 2007 M21-1 Manual Revisions, 72 Fed. Reg. at 66,219. The revisions at issue were not published in the Federal Register or the Code of Federal Regulations. The Board remains "bound only by 'regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department'"—and not the M21-1 Manual. *DAV*, 859 F.3d at 1077 (quoting 38 U.S.C. § 7104(c)). And, of course, the provisions in question are contained within an administrative staff manual: the M21-1 Manual. While it is admittedly true that compliance with this Manual revision by all internal VA adjudicators will affect the concerned veterans, at least initially, it also remains true that the Board is not bound to accept adjudications premised on that compliance. As we found in *DAV*, where the action is not binding on private parties or the agency itself, we have no jurisdiction to review it.

To be clear, it is not the moniker applied to this VA policy statement that is controlling. There are circumstances where we have found agency actions reviewable under § 552(a)(1) precisely because they had a binding effect on parties or entities other than internal VA adjudicators. *See, e.g.*, *Lefevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1196–98 (Fed. Cir. 1995). We addressed several of those cases in *DAV* and explained why they differed from the circumstances at issue there. 859 F.3d at 1075–77. While the Manual provisions here differ from those at issue in *DAV*, their scope and binding effect are identical. We, accordingly, must reach the same conclusion regarding the scope of our jurisdiction here as we did in *DAV*.

As we also explained in *DAV*, this disposition does not leave Petitioners without recourse. For example, "[a] veteran adversely affected by a M21-1 Manual provision can contest the validity of that provision as applied to the facts of his case under 38 U.S.C. § 7292." *DAV*, 859 F.3d

at 1078; *see, e.g.*, *Haas*, 525 F.3d at 1187–90 (reviewing a provision of the M21-1 Manual interpreting § 3.307(a)(6)(iii) as part of an appeal from the Veterans Court). Individual veterans and organizations such as Blue Water also may petition the VA for rulemaking. *See* 5 U.S.C. § 553(e). We have held that "§ 502 vests us with jurisdiction to review the Secretary's denial of a request for rulemaking made pursuant to § 553(e)." *Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345, 1352 (Fed. Cir. 2011).[1] Because the February 2016 revision to the M21-1 Manual falls under § 552(a)(2) and not § 552(a)(1) or § 553, however, we lack jurisdiction under § 502 to hear Petitioners' direct challenge to the revision.

We recognize the costs that today's outcome imposes on Petitioners and the veterans they represent. Petitioners sought direct review in this court to bypass yet another years-long course of individual adjudications or petitions for rulemaking. Given the health risks that many of these veterans face, Petitioners' urgency is understandable. But we are constrained by the narrow scope of the jurisdiction that Congress has granted to us.

We also note that, although the VA has delayed review of its interpretation by revising its manual instead of

---

[1]    Indeed, the parties advised us at oral argument that Gray and several other veterans have filed appeals to the Veterans Court from the VA's denials of their claims for disability compensation under the revised provision of the M21-1 Manual. Oral Argument at 6:53–8:13, *Gray v. Sec'y of Veterans Affairs*, 2016-1782, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-1782.mp3. Counsel for Gray and Blue Water also informed us that a petition for rulemaking regarding the definition of "inland waterways" is pending before the VA. *Id.* at 13:05–13:34.

pursuing formal rulemaking, "that convenience comes at a price." *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015). As the VA admits, an interpretive rule in an administrative manual "lack[s] the 'force and effect of law,' and thus receive[s] different 'weight in the adjudicatory process.'" *Gray* Resp. Br. at 30 (quoting *Perez*, 135 S. Ct. at 1204). And, agencies' "interpretations contained in . . . agency manuals . . . do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citations omitted). We must await an individual action to assess the propriety of the VA's interpretation of the Agent Orange Act and attendant regulations.

## III. CONCLUSION

For these reasons, we dismiss the petition for lack of jurisdiction.[2]

**DISMISSED**

---

[2] Also before us are two motions by Blue Water to supplement the index of record. No. 16-1793, ECF Nos. 22, 30. Because we lack jurisdiction to consider the merits of the VA's action, we deny both motions as moot.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT H. GRAY,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2016-1782

---

Petition for review pursuant to 38 U.S.C. Section 502.

--------------------------------------------------------------------------

**BLUE WATER NAVY VIETNAM VETERANS ASSOCIATION,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2016-1793

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

DYK, *Circuit Judge*, dissenting in part and concurring in the judgment.

The majority holds that we lack jurisdiction to review revisions to a Department of Veterans Affairs ("VA") manual used by the agency to adjudicate veterans benefits. The majority concludes it is bound to reach this result by the recent decision of another panel in *Disabled American Veterans v. Secretary of Veterans Affairs* (*DAV*), 859 F.3d 1072 (Fed. Cir. 2017). There, the panel categorically held that "[w]here, as here, manual provisions are interpretations adopted by the agency, not published in the Federal Register, not binding on the Board [of Veterans' Appeals], and contained within an administrative staff manual, they fall" outside the scope of 5 U.S.C. §§ 552(a)(1) and 553. *DAV*, 859 F.3d at 1078. It follows that there is no jurisdiction under 38 U.S.C. § 502. *Id.*

I agree we are bound by *DAV* to hold that the manual revisions are not reviewable. But I respectfully suggest that *DAV* was wrongly decided. The analysis of 5 U.S.C. § 552(a)(1) in *DAV*—rendered without substantial briefing on that statutory provision—conflicts with our prior decisions applying that subsection to VA actions. The rule established by *DAV* also departs from the approach of other courts of appeals, which have held that analogous agency pronouncements are reviewable. Nothing in § 502 suggests that we should be less generous in our review with respect to VA than other courts have been with respect to other agencies. And *DAV* imposes a substantial and unnecessary burden on individual veterans, requiring that they undergo protracted agency adjudication in order to obtain preenforcement judicial review of a purely legal question that is already ripe for our review.

I

Pursuant to the Agent Orange Act of 1991, 38 U.S.C. § 1116, and VA regulations, veterans who "served in the Republic of Vietnam . . . shall be presumed to have been

exposed" to Agent Orange, 38 C.F.R. § 3.307(a)(6)(iii). The regulations further define "[s]ervice in the Republic of Vietnam" to "include[] service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam." *Id.* For those veterans covered by the presumption, certain specified diseases "shall be considered to have been incurred or aggravated by such service, notwithstanding that there is no record evidence of such disease during the period of such service." § 1116(a)(1). This presumed service connection was established because, as Congress realized, in the absence of adequate contemporaneous records and testing, "it was too difficult to determine who was exposed and who was not." *Haas v. Peake*, 525 F.3d 1168, 1185 (Fed. Cir. 2008); *see also LeFevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1197 (Fed. Cir. 1995) ("Congress . . . recognized that ordinarily it would be impossible for an individual veteran to establish that his disease resulted from exposure to herbicides in Vietnam.").

Many of the rules that govern whether and how to apply the presumption of service connection are set forth in a VA document known as the Adjudications Procedures Manual M21-1 (the "Manual"), "an internal manual used to convey guidance to VA adjudicators" in dealing with veterans' benefits claims. Maj. Op. 5 (quoting *VA Adjudications Manual, M21-1; Rescission of Manual M21-1 Provisions Related to Exposure to Herbicides Based on Receipt of the Vietnam Service Medal*, 72 Fed. Reg. 66,218, 66,219 (Nov. 27, 2007)). As described by the majority, the Manual has for at least a decade included service in the "inland waterways" of Vietnam as sufficient to warrant the presumption. *Id.* at 6. In a 2009 letter, VA supplemented this provision by defining "inland waterways" to include rivers and deltas but not harbors and bays. *Id.* Petitioner Gray challenged that definition before the Court of Appeals for Veterans Claims, which found it to

be both irrational and inconsistent with VA's own regulations. *Id.* (citing *Gray v. McDonald*, 27 Vet. App. 313, 322-25 (2015)). The matter was remanded for further action by the Secretary. *Id.* (citing *Gray*, 27 Vet. App. at 326-27).

In February 2016, following the remand by the Court of Appeals for Veterans Claims, VA revised the portion of the Manual concerning its interpretation of the Agent Orange Act's requirement that the veteran have "served in the Republic of Vietnam." These revisions for the first time established a detailed test for determining whether service aboard a vessel in the vicinity of Vietnam suffices to establish a presumption of service connection. First, mirroring its 2009 letter, VA inserted a new instruction that "[s]ervice on offshore waters does not establish a presumption." Manual § IV.ii.1.H.2.a. In other words, while service in inland waterways qualifies, service in the offshore waters of Vietnam does not constitute service in the Republic of Vietnam. The revised Manual then goes on to narrowly define "inland waterways"[1] at the same

---

[1] *"**Inland waterways** are fresh water rivers, streams, and canals, and similar waterways. Because these waterways are distinct from ocean waters and related coastal features, service on these waterways is service in [Vietnam]. VA considers inland waterways to end at their mouth or junction to other offshore water features, as described below. For rivers and other waterways ending on the coastline, the end of the inland waterway will be determined by drawing straight lines across the opening in the landmass leading to the open ocean or other offshore water feature, such as a bay or inlet. For the Mekong and other rivers with prominent deltas, the end of the inland waterway will be determined by drawing a straight line across each opening in the landmass leading to the open ocean." Id.*

time it broadly defines "offshore waters": "***Offshore waters*** are the high seas and any coastal or other water feature, such as a bay, inlet, or harbor, containing salty or brackish water and subject to regular tidal influence. This includes salty and brackish waters situated between rivers and the open ocean." *Id.* § IV.ii.1.H.2.b.  Finally, the Manual notes that these revisions change the treatment of Qui Nhon Bay Harbor and Ganh Rai Bay: service in these bays previously entitled a veteran to the presumption, but they now fall outside the Manual's definition of inland waterways. *Id.* § IV.ii.1.H.2.c.  The Manual revisions significantly restrict the right to the presumptive service connection.  The question before us is whether the revisions are subject to preenforcement judicial review.

## II

Our jurisdiction here rests on 38 U.S.C. § 502, which provides, "An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review."  Section 553 defines the requirements for notice-and-comment rulemaking.  Section 552(a)(1) defines the circumstances when publication in the Federal Register is required and covers, among other things, "statements of general policy or interpretations of general applicability formulated and adopted by the agency."  5 U.S.C. § 552(a)(1)(D).  While I agree with *DAV* that the Manual is not the type of document that is reviewable because it is subject to the notice-and-comment rulemaking provisions of § 553, it is nevertheless an interpretation of general applicability under § 552(a)(1).

Other circuits have held that agency pronouncements such as those involved here are subject to preenforcement review.  Thus, for example, the District of Columbia Circuit has found agency guidance documents reviewable where, as here, the petitioners present purely legal claims.  In *Appalachian Power Co. v. Environmental*

*Protection Agency*, 208 F.3d 1015, 1020-23 (D.C. Cir. 2000), the District of Columbia Circuit determined it had jurisdiction to review a Clean Air Act guidance document published on an Environmental Protection Agency ("EPA") website. Although informally published and not subject to notice and comment, the guidance was found to be a "final agency action, reflecting a settled agency position which has legal consequences" for the parties. *Id.* at 1023. The court's decision rested in part on its observation that, as with the VA Manual revisions at issue here, "officials in the field [we]re bound to apply" the rules set forth in the guidance. *Id.* at 1022. In 2011, yet another Clean Air Act guidance was found reviewable where it bound EPA regional directors. *See Nat. Res. Def. Council v. Envtl. Prot. Agency*, 643 F.3d 311, 320 (D.C. Cir. 2011). In the transportation context, the District of Columbia Circuit found jurisdiction to review a Federal Highway Administration investigative training manual. *Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 163-65 (D.C. Cir. 1997); *see also W. Coal Traffic League v. United States*, 719 F.2d 772, 780 (5th Cir. 1983) (en banc) (reviewing guidelines of the Interstate Commerce Commission for regulating railroad rates). Thus the circuit found agency guidance, binding on agency subordinates, to be reviewable.

Nothing in § 502 suggests that we should be less generous in our review of actions taken by VA. There is, of course, a "well-settled presumption that agency actions are reviewable," unless Congress clearly precludes such review. *LeFevre*, 66 F.3d at 1198. There is no such clear preclusion in the VA statute. To the contrary, here—as in the other circuit cases discussed above—in the relevant jurisdictional provision, "Congress has declared its preference for preenforcement review of agency rules." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 330 F.3d 1345, 1347 (Fed. Cir. 2003).

## III

Preenforcement review of manual provisions is entirely consistent with the language of § 502. In that statute, as noted earlier, Congress chose to define our jurisdiction with reference to the Administrative Procedure Act's provisions concerning the requirements for public notice of agency actions. *See* 38 U.S.C. § 502. Agency actions requiring notice-and-comment rulemaking were made reviewable by reference to § 553. In addition, Congress made reviewable other agency actions described in § 552(a)(1). Section 552(a) establishes a hierarchy of government records.[2] Several categories of records most

---

[2]  Section 552(a) provides, in relevant part:

Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

. . .

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency;

. . . .

(2) Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—

. . .

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public;

. . . .

directly affecting members of the public must be published in the Federal Register, *see* § 552(a)(1); many routine or internal agency records must be publicly available, *see* § 552(a)(2); and still others need only be available by request, *see* § 552(a)(3). With respect to interpretive rules, § 552(a)(2)(B) directs that if they are "of general applicability," the Federal Register publication requirement of § 552(a)(1)(D) applies. In short, "statements of general policy or interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. § 552(a)(1)(D), must be published in the Federal Register and are thus reviewable under § 502. The relevant question for jurisdictional purposes, then, is whether the Manual revisions here are properly characterized as "statements of general policy or interpretations of general applicability." If so, we have jurisdiction under § 502.

*DAV* never directly addressed this question of the scope of "interpretations of general applicability." *DAV*'s analytical omission is not surprising given that the petitioners in that case focused their jurisdictional argument primarily on whether the Manual revisions at issue were substantive rules requiring notice and comment under § 553. The panel nonetheless rejected the applicability of § 552(a)(1). Latching onto the undisputed fact that the Manual is an "administrative staff manual" under § 552(a)(2)—a provision not referenced in § 502—the *DAV*

---

(3)

      (A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

court held that we lack jurisdiction "[w]here, as here, manual provisions are interpretations adopted by the agency, [1] not published in the Federal Register, [2] not binding on the Board itself, and [3] contained within an administrative staff manual, they fall within § 552(a)(2)—not § 552(a)(1)." 859 F.3d at 1078.

None of these three theories is supportable. First, the fact that the Manual revisions were not in fact published in the Federal Register does not support the majority's result. As the majority in this case and the panel opinion in *DAV* acknowledge, Maj. Op. 11; *DAV*, 859 F.3d at 1077, an agency's choice of whether and where to publish a rule are not controlling, *see, e.g.*, *Preminger v. Sec'y of Veterans Affairs*, 632 F.3d 1345, 1351 (Fed. Cir. 2011) (per curiam); *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir. 1977). Indeed, neither the majority here nor *DAV* cites any case in which the decision not to publish was even relevant in deciding the scope of § 552(a)(1). A contrary rule would permit the agency to defeat judicial review by the simple expedient of failing to fulfill its obligation to publish the document in the Federal Register.

Second, the fact that the Manual is not binding on the Board is equally irrelevant.[3] We have previously rejected this very theory. In *LeFevre*, the Secretary argued that his refusal to establish a presumption of service connec-

---

[3] As the majority notes, the Manual is "not binding on anyone other than the VBA [Veterans Benefits Administration] employees" and, in particular, does not bind the Board of Veterans Appeals ("Board"). Maj. Op. 5; *see also Carter v. Cleland*, 643 F.3d 1, 5 (D.C. Cir. 1980) (noting the Manual's binding effect on VA adjudicators); Office of Gen. Counsel, U.S. Dep't of Veterans Affairs, Op. Prec. 7-92, *Applicability of VA Manual M21-1, Part 1, Paragraph 50.45*, 1992 WL 1200482, at *2 cmt. 4 (Mar. 17, 1992) (same).

tion for certain cancers was not subject to review because it was nonbinding—veterans were still permitted to prove service connection on a case-by-case basis.  66 F.3d at 1197.  We rejected that contention, noting that such an action "'has an immediate and practical impact' on Vietnam veterans and their survivors . . . , was not 'abstract, theoretical, or academic,' 'touches vital interests of' veterans and their survivors, and 'sets the standard for shaping the manner in which an important segment' of the Department's activities 'will be done.'"  *Id.* at 1198 (quoting *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956)).  The same is true of the Manual revisions at issue here.  Also, as noted earlier, other circuits have held agency actions that were binding on subordinate agency officials to be reviewable.  *See Appalachian Power*, 208 F.3d at 1022 (reviewing a policy issued in a guidance document that "EPA officials in the field are bound to apply"); *Nat. Res. Def. Council*, 643 F.3d at 321 (reviewing a guidance document that "binds EPA regional directors").

As recognized by the majority, the Manual revisions' impact is extensive: "the VA instructed all claims processors in its 56 regional offices to exclude all Navy personnel who served outside the now-defined 'inland waterways' of Vietnam . . . from presumptive service connection for diseases or illnesses connected with exposure to Agent Orange."  Maj. Op. 7-8.  VA, too, "concedes that the impact of its manual changes is both real and far reaching."  *Id.* at 9.  Even though not binding on the Board, the Manual does bind the front-line benefits adjudicators located in each VA Regional Office ("RO").  *See, e.g.*, *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009).  Over 1.3 million claims were decided by the ROs in 2015, yet during that same period only 52,509 appeals of those decisions were filed before the Board.  *Compare* Office of Mgmt., U.S. Dep't of Veterans Affairs, *FY 2016 Agency Financial Report* 18 (Nov. 15, 2016), https://www.va.gov/finance/docs/afr/2016VAafrFullWeb.pd

f, *with* Bd. of Veterans Appeals, U.S. Dep't of Veterans Affairs, *Annual Report Fiscal Year 2015* (2016) [hereinafter *BVA Report*], https://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2015AR.pdf. Those few veterans who do seek Board review can expect to wait an additional three years between the filing of their appeal and a Board decision. *See BVA Report* 21. With roughly 96% of cases finally decided by VBA employees bound by the Manual, its provisions constitute the last word for the vast majority of veterans. To say that the Manual does not bind the Board is to dramatically understate its impact on our nation's veterans. Review of the Manual revisions is essential given the significant "hardship [that] would be incurred . . . if we were to forego judicial review." *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1316 (Fed. Cir. 2006).

Finally, as the majority here appears to agree, *see* Maj. Op. 11, *DAV*'s reliance on the form of the Manual cannot defeat jurisdiction. Nothing about the statute suggests that a document described in subsection (a)(2) could not also be subject to subsection (a)(1)'s more demanding requirements. Given the statute's "goal of broad disclosure" and the Supreme Court's instructions to construe its exemptions narrowly and exclusively, *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989), we should not read new limitations into § 552.

Implicit to *DAV*'s reasoning, in this respect, is the notion that § 552(a)(1) and § 552(a)(2) are mutually exclusive. In other words, *DAV* instructs that provisions of agency manuals, because described in subsection (a)(2), are therefore not rules of general applicability for purposes of subsection (a)(1). *See id.* at 1077-78 ("Congress expressly exempted from § 502 challenges to agency actions which fall under § 552(a)(2)."). There is no support for this view. Congress did not in fact "expressly exempt" actions described in § 552(a)(1) from § 552(a)(2). To the contrary, a range of content commonly found in

staff manuals—such as descriptions of an agency's organization, rules of procedure, and, importantly, generally applicable policies and interpretations—is expressly described in subsection (a)(1) despite also arguably being covered by the reference to manuals in subsection (a)(2)(C). Even if subsections (a)(1) and (a)(2) could be regarded as mutually exclusive, the Manual at issue here is not merely an "administrative staff manual": the Manual provides the rules of decision to be applied by agency adjudicators in responding to veterans' benefits claims. The revisions challenged here go well beyond "administrative" directions. They announce "interpretations of general applicability" subject to § 552(a)(1)'s publication requirement and, accordingly, to our review under § 502.

Cases from the Supreme Court, other courts of appeals, and our own court have held that similar agency pronouncements fall within the scope of § 552(a)(1) despite appearing within agency manuals. For example, in *Morton v. Ruiz*, 415 U.S. 199, 232-36 (1974), the Supreme Court held that provisions of the Indian Affairs Manual should have been published in the Federal Register pursuant to § 552(a)(1)(D) and the agency's own internal publication rules. Likewise, in *NI Industries, Inc. v. United States*, 841 F.2d 1104, 1107 (Fed. Cir. 1988), this Court held that contracting provisions located in an Army Standard Operating Procedures document were subject to § 552(a)(1)(D)'s publication requirement. *See also Linoz v. Heckler*, 800 F.2d 871, 878 n.11 (9th Cir. 1986) (finding a provision of the Medicare Carrier's Manual to be a generally applicable interpretation subject to § 552(a)(1)(D) publication); *Anderson*, 550 F.2d at 461-63 (same with respect to the Food Stamp Certification Handbook).

The majority's approach is also inconsistent with our own prior cases finding similar agency actions within the scope of § 502 and thus reviewable. Unlike *DAV*, each of these cases analyzed the substance and effect of the agency action, rather than its form. Most recently, in

*Snyder v. Secretary of Veterans Affairs*, 858 F.3d 1410, 1413 (Fed. Cir. 2017), we found reviewable an opinion of the VA General Counsel relating to attorney's fees because it "announces a rule that readily falls within the broad category of rules and interpretations encompassed by § 552(a)(1)(B)." In *Military Order of the Purple Heart v. Secretary of Veterans Affairs*, 580 F.3d 1293, 1296 (Fed. Cir. 2009), we found jurisdiction to review a VA letter changing the procedures for reviewing certain benefits awards. Our determination turned not on the form of the letter but on the fact that it "affects the veteran's substantive as well as procedural rights, and is 'a change in existing law or policy which affects individual rights and obligations.'" *Id.* (quoting *Animal Legal. Def. Fund v. Quigg*, 932 F.2d 920, 927 (Fed. Cir. 1991)). We found another VA letter reviewable in *Coalition for Common Sense*, 464 F.3d at 1316-18, by focusing on its effect within the agency and on outside parties and tribunals, not on its form. Finally, as described above, in *LeFevre*, 66 F.3d at 1196-98, we found jurisdiction to review the Secretary's decision to exclude certain cancers from the presumption of service connection by looking to its effects on the veterans suffering from those diseases.

\* \* \*

The provisions of agency manuals and similar documents have been previously held subject to preenforcement review. The *DAV* decision and the majority decision here represent an unwarranted narrowing of our jurisdiction. I respectfully suggest the *DAV* case was wrongly decided.