Citation Nr: 1814059 
Decision Date: 03/07/18 Archive Date: 03/14/18

DOCKET NO. 14-12 847 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for a skin condition, to include as the result of exposure to hazardous chemicals including the herbicide Agent Orange and photography developing chemicals.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Veteran, Veteran's spouse



ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel


INTRODUCTION

The Veteran served on active duty from October 1964 to September 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran testified before the undersigned Veterans Law Judge in August 2016. A copy of the transcript of this hearing has been added to the claims file.

In November 2016, the Board remanded these issues for additional development.

Since the issuance of the January 2017 supplemental statement of the case, additional evidence has been added to the Veteran's claims file. In a February 2018 correspondence, the Veteran's representative waived consideration of this evidence by the AOJ.

In an October 2017 rating decision, the RO denied entitlement to service connection for posttraumatic stress disorder (PTSD), depression, another specified stressor-trauma related disorder and persistent mood disorder. In October 2017, the Veteran filed the appropriate notice of disagreement (NOD) form as to the October 2017 rating decision regarding the denial of service connection for his claimed psychiatric disabilities. As it appears that the RO is actively working on this NOD, the Board will not remand it for a statement of the case.




FINDINGS OF FACT

1. A bilateral hearing loss disability was not shown during service or for many years thereafter, and the weight of the probative evidence is against a finding that a current bilateral hearing loss disability is related to active military service.

2. A skin disability was not shown in service, did not manifest to a compensable degree within one year of service separation, and is not otherwise related to service.


CONCLUSIONS OF LAW

1. A bilateral hearing loss disability was not incurred in the Veteran's active military service, and it may not be presumed to have been incurred therein. 38 U.S.C. §§ 1110, 1112, 1131, 1137, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2017).

2. A skin disability was not incurred in service, nor may it be presumed to have been incurred in service. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 1131, 5103, 5103(A) (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

The Veteran has not raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).
Laws and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden for certain chronic disabilities is through a demonstration of continuity of symptomatology. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b).

I. Hearing Loss

Laws and Regulations

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Tests are less than 94 percent. 38 C.F.R. § 3.385. Additionally, it is noted that the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993).
Certain diseases, to include sensorineural hearing loss may be presumed to have been incurred in service when manifest to a compensable degree within one year of discharge from active duty. 38 U.S.C. § 1112 (2012); 38 C.F.R. §§ 3.307, 3.309 (2017). 

Factual Background and Analysis

The Veteran testified that he first noticed hearing impairment on board the carrier, the USS CORAL SEA (CVA-43). He explained that it was his job to photograph flight operations and to load and unload film from cameras on the aircraft which involved being around jet engine noise. Hearing protection was available, and he used it, but it would often blow off in the wind and jet wash. He took the cameras up beyond the flight line three to four times a day. He reported that at the end of the day, he would not be able to hear things, and a person speaking to him would have to raise his voice, as he would to others who had worked under the same conditions. In addition, the laboratory in which he and others developed photographs was directly below the catapults and was consequently very noisy. After the catapults would launch, the Veteran testified that he would hear ringing in his ears and he would have to really yell at the guy next to him to be heard. 

The Veteran had in-service audiological evaluations during service in August 1964 and August 1968, at which time auditory thresholds were recorded. The Veteran's service treatment records are negative for findings of bilateral hearing loss.

Audiometric testing in November 2012 revealed pure tone thresholds, obtained by air conduction, in decibels, as follows: 




HERTZ



500
1000
2000
3000
4000
RIGHT
15
25
20
15
25
LEFT
15
25
20
15
25

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and of 100 percent in the left ear. 
The examiner indicated that no diagnosis was provided as there was no pathology to render a diagnosis.

The Veteran underwent a VA examination in February 2014. 

Audiometric testing in February 2014 revealed pure tone thresholds, obtained by air conduction, in decibels, as follows: 




HERTZ



500
1000
2000
3000
4000
RIGHT
25
25
20
20
20
LEFT
25
30
25
25
30

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and of 100 percent in the left ear. 

The examiner indicated that no diagnosis was provided as there was no pathology to render a diagnosis. The examiner did however opine that the Veteran's tinnitus was at least as likely as not caused by or the result of military noise exposure by the nature of his noise exposure on the military flight deck. 

Per the November 2016 Board remand instructions, the Veteran underwent a VA examination in January 2017. 

Audiometric testing in January 2017 revealed pure tone thresholds, obtained by air conduction, in decibels, as follows: 




HERTZ



500
1000
2000
3000
4000
RIGHT
25
30
30
30
30
LEFT
30
35
30
30
35

Speech audiometry revealed speech recognition ability of 98 percent in the right ear and of 96 percent in the left ear. 
The examiner indicated that the Veteran's hearing loss was less likely than not caused by or the result of military noise exposure. The examiner noted that the Veteran's in-service audio examinations had no threshold shifts noted during his time in service. Although a ratable hearing loss was identified on the test findings, hearing loss occurred several years after separation from military service. The examiner also noted that the weight of the medical literature indicates that noise induced hearing loss demonstrates its worst effects immediately following exposure that stabilized or improved over time. The examiner reported that military noise effects would have been evident upon the separation hearing examination in August 1968. Therefore, it was at least as likely as not that the current hearing loss identified was multifactorial in nature encompassing aging, idiopathic factors or recreational/occupational noise, and less likely as not due to military hazardous noise exposure.

In an August 2017 correspondence, a private audiologist noted that the Veteran had a history of gradually decreasing hearing bilaterally. The private audiologist also noted that during the Veteran's service, he was exposed to significant amounts of loud noise including jet engine noise while working on the flight deck. After service, he had some noise exposure at his job at a glass factory but he wore hearing protection during his employment. The private audiologist noted that it was difficult to separate out what portion of his hearing loss may be caused by the aging process or other factors. The audiologist opined that based on the type, amount and duration of his service related noise exposure, on a more probable than not basis at least a portion of his hearing loss was caused by noise exposure while in service. 

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for bilateral hearing loss is not warranted.

The record shows that the Veteran currently has bilateral hearing loss for VA compensation purposes. Accordingly, as there is a current hearing loss disability, the first element of service connection is satisfied. 


Turning to in-service injury, the Board notes that the Veteran has asserted that he sustained acoustic trauma during service. In particular, it is noted that the Veteran reported that during service he photographed flight operations and loaded and unloaded film from cameras on the aircraft which involved being around jet engine noise. In this regard, the Veteran is competent to give evidence about what he experienced, and acoustic trauma is subject to lay observation. See e.g., Layno v. Brown, 6 Vet. App. 465 (1994); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). Therefore, the Board finds that the Veteran was exposed to hazardous noise during service and noise exposure has been conceded.

However, the Veteran's service treatment records are negative for complaints or treatments regarding a bilateral hearing loss disability. Notably, the Veteran's August 1968 separation examination was negative for complaints or treatments of hearing loss and the recorded audiogram did not demonstrate hearing loss for VA compensation purposes.

Additionally, the Board notes that there are no clinical findings or diagnoses of bilateral hearing loss during service or for several years thereafter. The first post-service evidence of a hearing loss disability is the January 2017 VA examination. 

None of the private or VA treatment records show that the Veteran was diagnosed with bilateral hearing loss to a compensable degree within one year of service. To the extent that the Veteran is asserting a continuity of symptomatology since service, the Board does not find the Veteran to be credible with regard to any assertions that he has had symptoms of a bilateral hearing loss disability since service. There was no indication in the record, to include any statements from the Veteran of hearing trouble until his November 2012 VA examination. On the contrary, the lack of any findings pertaining to hearing loss during service and the essentially normal findings at service separation weigh against a finding that the Veteran's current hearing loss disability was originally manifested during service and has continued since service. In this regard, emphasis is placed on the multi-year gap between discharge from active duty service (September 1968) and the complaints of hearing loss at the November 2012 VA examination.
As the Veteran's service treatment records were negative for any complaints, treatment, or diagnoses of a hearing loss disability, he was not diagnosed with a hearing loss disability until many years after service, and there was a significant period between his service and his post-service complaints where the medical record was silent for complaints of a hearing loss disability, the Board concludes that the weight of the evidence is against a finding of continuity of symptomatology since service. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000). 

Regarding a relationship between the Veteran's current hearing loss disability and his service, the Board notes that there are conflicting medical opinions of record addressing the possibility of a relationship between the Veteran's current hearing loss disability and his service. As noted above, a private audiologist in August 2017 opined that based on the type, amount and duration of the Veteran's service related noise exposure, on a more probable than not basis at least a portion of his hearing loss was caused by noise exposure while in service

Conversely, the January 2017 VA examiner concluded that the Veteran's hearing loss was not related to the Veteran's military service.

In this regard, the Board may favor the opinion of one competent medical professional over that of another so long as an adequate statement of reasons and bases is provided. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). An evaluation of the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the examiner's knowledge and skill in analyzing the data, and the medical conclusion reached. The credibility and weight to be attached to such opinions are within the province of the Board as adjudicators. Guerrieri v. Brown, 4 Vet. App. 467 (1993).

Greater weight may be placed on one physician's opinion over another depending on factors such as reasoning employed by the physicians and whether or not and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994). The probative value of a medical opinion is generally based on the scope of the examination or review, as well as the relative merits of the expert's qualifications and analytical findings, and the probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993). 

In this instance, the Board finds that the January 2017 opinion of the VA examiner to be the most probative. 

Regarding the August 2017 opinion of the private audiologist, while the audiologist indicated that "at least a portion of his hearing loss was caused by noise exposure while in service," he also specifically noted that it was difficult to separate out what portion of his hearing loss may be caused by the aging process or other factors. Additionally, the private audiologist did not account for the Veteran's service treatment records which did not demonstrate a threshold shift between the entrance and separation examinations.

In contrast, the January 2017 VA examiner, provided an unequivocal and detailed medical opinion supported by a pertinent rationale based upon a review of the Veteran's claims file and an examination of the Veteran, when concluding that the Veteran's hearing loss less likely than not related to active duty to include acoustic trauma. 

When composing his January 2017 opinion, the VA examiner, a VA audiologist, had the benefit of a review of the Veteran's claims file, provided a more detailed rationale than the private physician and also specifically addressed the fact that the Veteran's in-service audio examinations had no threshold shifts noted during his time in service. The examiner also noted that the Veteran's hearing loss occurred several years after separation from military service and that military noise effects would have been evident upon the separation hearing examination in August 1968 as the weight of the medical literature indicates that noise induced hearing loss demonstrates its worst effects immediately following exposure that stabilized or improved over time. Additionally, the January 2017 VA examiner provided a thorough rationale for this finding, citing to facts of the Veteran's case and pertinent medical principles. 

For these reasons the Board finds the January 2017 VA examiner's opinion to be the most probative regarding the issue of whether the Veteran's current hearing loss disability is related to his service. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) ("It is the responsibility of the BVA to assess the credibility and weight to be given the evidence.") (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). See also Guerrieri v. Brown, supra, (the probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board).

Given that the most probative opinion is against a finding of a relationship between a hearing loss disability and his service, the Board finds that service connection is not warranted.

The Board finds that the competent evidence of record, while showing the currently diagnosed disability of hearing loss, does not demonstrate hearing loss manifested to a compensable degree within one year of separation. Additionally, given that the most probative opinion is against a finding of a relationship between a claimed bilateral hearing loss disability and service, the Board finds that service connection is not warranted. 

For the foregoing reasons, the Board concludes that the preponderance of the evidence is against the claim of entitlement to service connection for a bilateral hearing loss disability. The benefit of the doubt doctrine is therefore not applicable, and the claim must be denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).

II. Skin Disability

The Veteran and his spouse testified that the Veteran manifested symptoms of a skin condition in 1968, immediately after his discharge from active service. 

The Veteran's spouse testified noticing when they met that the Veteran scratched behind his knee. After they were married, she noticed that the pants he wore to work wore thin on the back of the knee. The Veteran stated that he first noticed the rash after his first deployment in 1965. He associated it with exposure to Agent Orange and to chemicals used in processing photographs. He explained that the photographers mixed the chemicals for developing this film, and that they dipped the paper into it by hand. They were exposed both to the dry chemical mix and to the wet chemicals after they were mixed.

Initially, the Board notes that the law provides that if a veteran was exposed to a herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. However, the Veteran's current diagnosed skin disability of lichen simplex chronicus is not one of the conditions for which VA has specifically determined a presumption of service connection.

Service connection for the specified diseases may be granted on a presumptive basis due to herbicide exposure, provided the disease manifests to a compensable degree within a specified period in a Veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 38 U.S.C. § 1116(a) (2012); 38 C.F.R. §§ 3.307(a)(6)(ii), 3.309(e). 

"Service in the Republic of Vietnam" includes service in the waters off shore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(iii). A veteran must actually set foot within the land borders of Vietnam, to include the contiguous waterways, in order to be entitled to the statutory presumptions for disabilities claimed as a result of exposure to herbicides. See Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008). Following Gray v. McDonald, 27 Vet. App. 313 (2015), VA revisited this issue and identified specific harbors that qualify as an inland waterway for the purposes identifying applicable service in the Republic of Vietnam.

The Board initially notes that the Veteran's ship, the USS CORAL SEA (CVA-43), was noted to be in the official waters of the Republic of Vietnam. Notably, the Veteran has not contended he went ashore in Vietnam during active service, nor does the evidence of record reflect that the USS CORAL SEA operated in the inland waterways, including the additional harbors identified as qualifying by the VA after the Gray decision. 

Therefore, as neither presumptive nor actual herbicide exposure is supported by the evidence of record, entitlement to presumptive service connection is not warranted. 

Nevertheless, the Veteran has credibility reported exposure to chemicals involved in developing photographs during his service. As a result, the analysis addresses whether the Veteran has a current skin disability that is directly related to service to include as the result of exposure to photography developing chemicals.

Regarding service connection on a direct basis to include as a result of exposure to photography developing chemicals, the Veteran's service treatment records are negative for treatments or complaints of a skin disability.

A May 2011 VA treatment note indicated that the Veteran had reported having a rash on his back and neck since 2005. 

In May 2011, the Veteran underwent an Agent Orange protocol examination. It was noted that the Veteran served upon the USS CORAL SEA and that he had no land duty in Vietnam. It was noted that the Veteran developed a rash on his right arm and back right after his military service. The diagnosis was eczematoid dermatitis.

A June 2011 VA treatment report noted diagnoses of dermatitis, eczema and lichenification/itch. 

Per the November 2016 Board remand instructions, the Veteran underwent a VA examination in January 2017. The examiner noted that the Veteran had a diagnosis of lichen simplex chronicus with a date of diagnosis of 2011. The Veteran reported that his skin condition started after his first tour of duty as he had an itchy rash on the back of his leg that went to his back and right shoulder. The examiner noted that the Veteran's entrance and separation examinations were normal. While August 2007 and September 2008 VA urology notes indicated that there were no skin lesions or rashes, an August 2010 urology note reported that the Veteran had severe eczema with psoriasis in the back region and upper arm. 

The examiner opined that it was less likely than not that the Veteran's current lichen simplex chronicus was incurred in or caused by service to include exposure to chemicals used in the development of photographs. The examiner noted that lichen simplex chronicus was not a primary skin condition but rather a result of chronic scratching. The itching that may initiate this condition may be due to a primary skin disorder such as atopic dermatitis (which was frequent with patients who had a history of hay fever which was noted on the Veteran's enlistment examination) or contact dermatitis (such that was possible with photo developing chemicals) or with dry skin. Chronic itching may also be caused by metabolic or nerve-related conditions. The examiner noted that the initial and/or sustaining cause of the Veteran's chronic itching with resultant lichen chronicus had not been determined. However, absent repeated exposures of a chemical, it was unlikely that a contact dermatitis would persist for months to years or decades. The examiner also noted that the Veteran's history of a rash persisting since his service was considered. The rash was initially behind his knees but had now resolved. The Veteran's wife's statements of an itchy rash since soon after service were also considered but the lack of documentation of complaints, evaluation or treatment of a skin disorder during and for more than 40 years after service was also considered. The examiner opined that after a thorough review of the available record, there was no sufficient evidence to indicate that there was a 50 percent likelihood that the Veteran's lichen simplex chronicus was incurred during or caused by active duty service. 

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for a skin disability is not warranted.

As noted above, the Veteran and his spouse testified that the Veteran manifested symptoms of a skin condition in 1968, immediately after his discharge from active service. Despite these complaints, the service treatment records, however, were negative for any or diagnoses of any skin disability. 

The Board finds that the weight of the evidence is against a finding that the Veteran's current skin disability is etiologically related to the Veteran's military service. In fact, the only medical opinion addressing the etiology of the disability weighs against the claim as the January 2017 VA examiner concluded that it was less likely than not that the Veteran's skin disability was incurred in or caused by the claimed in-service injury, event or illness to include as due to chemicals used in the development of photographs. The examiner specifically noted that there was a lack of documentation of complaints, evaluation or treatment of a skin disorder during and for more than 40 years after service. Additionally, the examiner noted that the itching that may have initiated the Veteran's current skin disability may be due to a primary skin disorder such as contact dermatitis which was possible with exposure to photo developing chemicals. However, the examiner also noted that absent repeated exposures of a chemical, it was unlikely that a contact dermatitis would persist for months to years or decades. 

None of the competent medical evidence currently of record refutes this conclusion, and the Veteran has not presented any such existing medical evidence or opinion. 

The Board again notes the Veteran's contentions regarding the etiology of his claimed skin disability. To the extent that the Veteran himself contends that a medical relationship exists between his claimed current skin disability and service, the Board finds that the Veteran and his representative do not have the medical expertise to provide an opinion regarding the skin disability etiology. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465 (1999). Accordingly, the Board affords the Veteran's assertions regarding the etiology of his claimed skin disability little probative weight. 

In sum, the Board finds that service connection for a skin disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 


ORDER

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for a skin condition, to include as the result of exposure to hazardous chemicals including the herbicide Agent Orange and photography developing chemicals is denied.





____________________________________________
S. HENEKS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs